No. 31,915

DAVID H. SCHMIDT and WALTER D. SCHMIDT, *Appellees* and *Cross-Appellants,* v. JOHN PLUMMER, *Appellant.*

No. 31,672

THE ALLEN TRACTOR AND IMPLEMENT COMPANY, *Appellee,* v. JOHN PLUMMER, *Appellant.*

No. 31,673

E. M. HENDERSON, *Appellee,* v. JOHN PLUMMER, *Appellant.*

(37 P. 2d 1)

Opinion filed November 3, 1934.

*C. E. Vance, Clifford R. Hope* and *A. M. Fleming,* all of Garden City, for the appellant.

*G. L. Light,* of Liberal, and *H. W. Stubbs,* of Ulysses, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action for accounting of the transactions under a lease of large tracts of land from John Plummer to David H. Schmidt, and Walter D. Schmidt, the son of David.

There were some preliminary negotiations by Plummer to the Schmidts in December, 1929, about the sale of the land, part of which was to be broken, at what is called the customary rate, which in that community was $1.50 per acre. No contract in writing was presented, and Plummer testified that none was made. Later the Schmidts and Plummer entered into a contract of lease, the date of which is not found by the referee who tried the cases, and the sale negotiations were abandoned.

The lease was made of large tracts of land, some of which had not yet been broken. The Schmidts took possession of the land, known as the Carruthers tract under the lease, and prepared the land. About 1,600 acres was sown to wheat in the fall of 1930. No mention was made in the lease of the breaking nor provision made for paying for the breaking of the sod. In the course of the year several loans were made by Plummer to the Schmidts, to help them in carrying out the details of the lease. He had in the lease made in 1930 procured a provision for a mortgage on 1,800 acres of wheat to be planted during the latter part of 1930, under which he claimed a lien. The document was filed with the register of deeds. The Schmidts gave mortgages to the Allen Tractor and Implement Company, and also one of the Schmidts gave a mortgage to E. M. Henderson. A mortgage was given to another party who did not appeal and is no longer interested in the litigation. Later the cases were consolidated, and the court appointed E. R. Thorpe as referee to try them. Requests for findings were submitted, and in May, 1933, the findings of the referee were made and approved by the court, and judgment was entered on that date. The referee made his report on May 14, 1933, and the plaintiffs did not file a motion for a new trial for several months thereafter. Then they raised the question as to the breaking and several other questions of fact.

The court held that the agreement in the lease to give a mortgage on a crop not yet planted was not a valid lien, and held that the

mortgages to the Allen Tractor and Implement Company, and to E. M. Henderson, were superior to the claims of Plummer, and judgment was entered giving the Schmidts recovery from John Plummer, and also a judgment against Plummer on mortgages to the Allen Tractor and Implement Company, for $1,524.90, with interest from May 15, 1933, and judgment for E. M. Henderson against Plummer for $746.66, with interest from May 15, 1933, at the rate of six per cent.

The referee found that there was no controversy between the parties as to the number of bushels sold or the amount of money received for the same. The Schmidts appear to have made no charge in the contract for the breaking of sod; at least, did not insert into the terms of the lease a proposition fixing the amount to be received for the breaking, if anything.

There was a tract of Plummer's outside of the Carruthers land that was orally leased by Plummer to the Schmidts, which was unbroken, and the Schmidts agreed to pay, as rent, one-fourth of all the wheat raised on this place. The amount paid as rental on the share plan was one-third of the crop on the Carruthers land, and the share received by the landlord may have been diminished to pay for the breaking.

On the Carruthers land, a total yield of wheat in 1931 was 32,391 bushels, and under the oral lease 7,036 bushels was produced, making a total of 39,427 bushels. Plummer, as landlord, was entitled to receive as rental 12,556 bushels and the Schmidts would receive 26,871 bushels. It appears that the Schmidts sold 387 bushels to purchase gas and oil for their machinery used in harvesting, and Plummer was awarded $44.96 representing a one-third interest therein.

When the wheat was threshed Plummer hauled or caused to be hauled all of the wheat to his elevators, granaries, or round top at Johnson, in Stanton county, and it was agreed that all the wheat not sold prior to August 15, 1931, should be stored by Plummer in his bins and granary, without pay to him for the first month and thereafter he should hold it at one-half cent per bushel per month until the Schmidts had an opportunity to obtain a better price. The referee fixed the price of wheat on October 30, 1931, as the price that should govern in this case. It was found that the price on this date was .35 cents a bushel, and sometime later it was six cents higher. Plummer claimed to have taken possession of the wheat under a

foreclosure proceeding under what he called his mortgage lien. It was found that Plummer took and converted to his own use all of the tenant's share of the wheat except the 387 bushels spent for gas and oil. The parties agreed that the quantity of wheat accounted for by Plummer was the correct number of bushels and also the correct price on the day of sale. Plummer claimed that the provision in the lease for a future mortgage on wheat not yet sown was a valid lien. The wheat was not planted until about the first of September, and not being sown it was not subject to mortgage until it was growing or in existence.

Plummer claims that the provision in the lease with reference to a mortgage was the equivalent of a mortgage and entitled him to a lien on the crop. The wheat, however, was not yet planted, and was not subject to a mortgage until it was planted. No legal mortgage could be given on crops not then in existence, and if a mortgage was intended, the one given was not effective in law. (*Long v. Hines,* 40 Kan. 216, 220, 16 Pac. 339, 19 Pac. 796; *Holt v. Lucas,* 77 Kan. 710, 96 Pac. 30; *Danville State Bank v. May,* 126 Kan. 714, 271 Pac. 320.) A contract for the mortgaging of future acquired property may be valid and enforceable as between the parties, but here we have intervening parties who had acquired an interest in the property wherein valid liens were given to third parties.

It is argued that error was committed in refusing to allow the Schmidts for the breaking of the Carruthers land. The testimony of plaintiff showed that there was a contract of sale signed and other papers executed in which Plummer agreed to pay the customary rate for the breaking of the land, and that the rate in Stanton county was shown to be $1.50 an acre. He was unable to produce the contract or papers, and Plummer insists that no contract was actually made. While at first they talked about a sale, that was abandoned and a lease made to the Schmidts, and they took possession under the lease and acted under it. The referee shows that some negotiation was had, but the record is not clear and it was not shown satisfactorily that a contract was made. Some negotiations were had with reference to a purchase, but Plummer says that it did not progress to a contract, and what was done by the Schmidts was done under the lease.

Besides, it might be said that the referee found against them on the question of fact, and that they did not file a motion for a new trial within three days. It has been held that where a case has been

referred and a finding of fact by a referee is sought to be reviewed, a motion for a new trial must be filed within the statutory time of three days. (*Milling Co. v. Schreiber*, 102 Kan. 172, 169 Pac. 222.) Failing to file the motion for a new trial within the time fixed, the Schmidts have waived the right to attack the findings of fact made by the referee, on this and other questions of fact raised by the plaintiffs.

It may be said that the referee made a specific finding that all the parties to the action acted in good faith throughout the proceedings, that there was no fraud or intentional wrongdoing upon the part of any of the litigants and that no wrongful intention was shown. Not all of the questions discussed by counsel have been treated and some of them have not been mentioned, but we have examined the accounting in detail and find no error committed by the court, and the judgment is affirmed.

In case No. 31,672, the plaintiff, the Allen Tractor and Implement Company, brought their action to recover from Plummer the possession of the crop on which a mortgage had previously been given by the Schmidts, who raised the crop. Reference is made to the record of the case of *Schmidts v. Plummer,* as to the wheat·raised and harvested by the Schmidts, and of which Plummer took and has held possession. He claimed a lien on the wheat, which has been denied. The right of Schmidt to two-thirds of the wheat was settled and determined, and of that quantity, the Allen Tractor and Implement Company was given a mortgage by the Schmidts. It appears that the mortgage so given by the Schmidts to the Allen Tractor and Implement Company was prior and superior to the claim of lien made by Plummer for the possession of the wheat. The court found that the Allen Tractor and Implement Company was entitled to a judgment for $1,524, with six per cent interest from May 15, 1933, and that Plummer was chargeable with a share of the costs, which was stated.

The consideration for the mortgage was the machinery purchased from the Allen Tractor and Implement Company, which was used by the Schmidts in raising and harvesting the crop, and is, beyond question, good consideration.

The judgment is affirmed.

In case No. 31,673, E. M. Henderson was given a mortgage on two-thirds of the wheat grown on a specified tract of the land, and it was found that he was entitled to judgment against Plummer for

$746.66. He was also given judgment for six per cent interest from May 15, 1933, and Plummer is chargeable with $86 of the fees and expenses herein. The mortgage was given under similar circumstances as that of the Allen Tractor and Implement Company, and is superior to any claim of Plummer in the wheat.

That judgment is affirmed.